**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

CORECIVIC, INC.,

*Plaintiff-Appellant*,

v.

CANDIDE GROUP, LLC; MORGAN SIMON,

*Defendants-Appellees.*

No. 20-17285

D.C. No. 3:20-cv-03792-WHA

OPINION

Appeal from the United States District Court
for the Northern District of California
William Alsup, District Judge, Presiding

Argued and Submitted June 14, 2022
San Francisco, California

Filed August 30, 2022

Before: Sidney R. Thomas, Ronald M. Gould, and
Carlos T. Bea, Circuit Judges.

Opinion by Judge S.R. Thomas;
Dissent by Judge Bea

## SUMMARY[*]

### California's Anti-SLAPP Statute

The panel held that the special motion provision of California's anti-SLAPP statute applied in federal court, and affirmed in part the district court's order granting Candide Group, LLC's motion to strike a defamation complaint brought by CoreCivic, Inc., under California's anti-SLAPP statute.

At issue were several statements in articles published by Morgan Simon on Forbes.com that connected CoreCivic to the detention of separated families at the U.S. border and characterized its lobbying efforts as pushing for punitive criminal and immigration laws.  Simon's firm is Candide Group.  CoreCivic filed suit against Simon and Candide Group (collectively "Candide") for defamation and defamation by implication.  Candide made a special motion to strike CoreCivic's complaint under California's anti-SLAPP Act, Cal. Civ. Proc. Code § 425.16.

CoreCivic argued on appeal that the special motion to strike provision cannot be applied in federal court because it conflicts with Federal Rules of Civil Procedure 8, 12, and 56.  Recognizing that this argument is foreclosed by this court's precedents,  CoreCivic further argued that this precedent should be revisited due to the Supreme Court's decision in *Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co.*, 559 U.S. 393 (2010).

---

[*] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

The panel held that the court's prior precedents control. In *United States ex rel. v. Lockheed Missiles & Space Co.*, the court held that California's anti-SLAPP statute applied in federal diversity actions because there was "no 'direct collision'" between the statute and the relevant rules, and the twin purposes of *Erie* favored its application. 190 F.3d 963, 972–73 (9th Cir. 1999). In *Planned Parenthood Fed'n of Am., Inc. v. Ctr. For Med. Progress*, 890 F.3d 828, 833 (9th Cir. 2018), the court held that special motions to strike challenging the legal sufficiency of complaints should be evaluated under Fed. R. Civ. P. 12(b)(6).

A three-judge panel may overrule the decision of a prior panel only where an "intervening higher authority" is "clearly irreconcilable" with the reasoning of that decision. *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc). The panel held that *Shady Grove* was not "intervening" authority because since it was decided, the court has routinely applied the California anti-SLAPP statute in federal court. The panel further held that *Shady Grove* was not clearly irreconcilable with circuit law. Even if it qualified as "intervening authority," *Shady Grove* did not put forward a new framework; it merely framed the direct collision inquiry in a new way. To the extent this reframing changed the inquiry at all, it could nevertheless be reconciled with *Planned Parenthood*. The panel concluded that it could apply the prior circuit precedent without running afoul of the intervening authority, and that California's anti-SLAPP statute applied.

The panel turned to the merits of Candide's anti-SLAPP motion. Because CoreCivic did not contest on appeal that the suit implicated Candide's First Amendment rights, the panel needed only to determine–applying the 12(b)(6) standard–whether CoreCivic stated a claim for defamation

under California law.  With respect to the claims reached by the district court–those concerning the family separation statements–the panel held that CoreCivic's express defamation theory failed because it did not adequately plead falsity, and that its implied defamation theory failed because its proffered interpretation of Simon's statement was implausible.

The panel concluded that CoreCivic failed to plausibly plead a defamation or a defamation by implication claim based on statements about its connection to the separation of immigrant families at the U.S. border, and affirmed the district court's dismissal of those claims.  Because the district court did not reach CoreCivic's claims relating to statements about its lobbying activity, the panel remanded those claims to the district court for resolution in the first instance.

Judge Bea dissented. He agreed with the majority that California's anti-SLAPP motion was applicable in federal court, that the Supreme Court's decision in *Shady Grove* did not abrogate this court's precedents so stating, that the district court properly granted Candide's anti-SLAPP motion on CoreCivic's express defamation claim for failure to plead falsity, and that the lobbying-based defamation claims should be remanded to the district court.  He dissented on the sole issue of Candide's implied defamation claim because, on that claim, the district court erred in granting Candide's anti-SLAPP motion. A jury should be allowed to decide whether a defamatory meaning was conveyed to readers.

## COUNSEL

Elizabeth M. Locke (argued), Joseph R. Oliveri, and Daniel D. Mauler, Clare Locke LLP, Alexandria, Virginia, for Plaintiff-Appellant.

Thomas R. Burke (argued), Davis Wright Tremaine LLP, San Francisco, California; Selina MacLaren, Davis Wright Tremaine LLP, Los Angeles, California; Abigail B. Everdell, Davis Wright Tremaine LLP, New York, New York; for Defendants-Appellees.

Gregg P. Leslie and Tayler Brown, First Amendment Clinic, Arizona State University, Sandra Day O'Connor College of Law, Phoenix, Arizona, for Amici Curiae Center for Investigative Reporting Inc., Center for Public Integrity, First Look Institute Inc., Marshall Project Inc., and Pro Publica Inc.

Lauren C. Regan, Civil Liberties Defense Center, Eugene, Oregon, for Amici Curiae Members of "Protect the Protest" Task Force.

Katie Townsend, Sarah S. Matthews, and Charles Hogle, Reporters Committee for Freedom of the Press, Washington, D.C. for Amici Curiae Reporters Committee for Freedom of the Press and 33 Media Organizations.

**OPINION**

S.R. THOMAS, Circuit Judge:

This appeal presents the question of whether our long line of precedents holding that California's anti-SLAPP statute applies in federal court are so irreconcilable with the Supreme Court's decision in *Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co.*, 559 U.S. 393 (2010) that we, acting as a three judge panel, must overrule them. We conclude that no intervening authority, including *Shady Grove*, is clearly irreconcilable with our prior cases, and we decline to overrule them.

Applying California's anti-SLAPP statute as interpreted by our caselaw, we conclude that CoreCivic, Inc. (CoreCivic) failed to plausibly plead a defamation or a defamation by implication claim based on statements about its connection to the separation of immigrant families at the U.S. border. Accordingly, we affirm the district court's order dismissing those claims. Because the district court did not reach CoreCivic's claims relating to statements about its lobbying activity, we remand those claims to the district court for resolution in the first instance.

I

A

Between September 2018 and September 2019, Morgan Simon published three articles on Forbes.com as a

"contributor."**[1]**  The pieces highlighted connections between the banking system and private prison companies, and were sharply critical of CoreCivic, one of the largest operators of private prisons and immigrant detention centers in the United States.

Simon's critiques of private prisons could hardly have come as a surprise.  She is the co-founder of an Oakland-based Registered Investment Advisor focused on socially responsible investing.  Her firm, Candide Group, is a member of the Families Belong Together coalition, which was formed with the explicit goal of pressuring financial institutions to cut ties with private prison companies.

At issue here are several statements in the articles that connect CoreCivic to the detention of separated families at the U.S. border and characterize its lobbying efforts as pushing for punitive criminal and immigration laws. Specifically, Simon wrote that "CoreCivic . . . manag[es] some of the detention centers that have been at the heart of the controversy over the separation of families and incarceration of individuals for crossing the US border," and that "CoreCivic . . . hold[s] contracts to operate detention centers, and [is] profiting off the pain and separation of families."  She also wrote that "GEO Group [another private prison company] and CoreCivic have a long history of profiting from mass incarceration: they make money when beds are filled, justly or unjustly, which is why they've spent $25M on lobbying over the past three decades to push for harsher criminal justice and immigration laws."

---

**[1]** The "contributor" designation means that the articles were not edited by Forbes.

In response to a letter from CoreCivic's attorneys charging her with making "demonstrably false" accusations, Simon updated two of her articles. At the end of one article, Simon added a "Clarification" section, which read in relevant part: "This article does not intend to suggest that CoreCivic . . . housed children separated from their parents pursuant to the Trump family separation policy." In the same section, Simon noted that in her view, "[f]amily separation is . . . practiced in the context of both immigration and mass incarceration, such that it is possible to participate in family separation without participating in the housing of children," while acknowledging that "the terminology of 'family separation' tends to focus on the detention of children." Another article was updated to include the statement: "CoreCivic say[s] that they don't lobby on legislation or policies that would affect the basis for or length of incarceration or detention."

These clarifications did little to assuage CoreCivic's concerns. On March 4, 2020, CoreCivic filed this suit against Simon and Candide Group (collectively "Candide") in the Central District of California for defamation and defamation by implication.**[2]** CoreCivic's complaint identified two distinct categories of allegedly defamatory statements made by Simon across the three articles: 1) statements falsely accusing CoreCivic of housing children separated from their parents pursuant to the government's family separation policy, and 2) statements falsely accusing CoreCivic of lobbying for more punitive criminal and immigration laws.

---

**[2]** By joint stipulation of the parties, the case was later transferred to the Northern District of California.

B

On August 6, 2020, Candide made a special motion to strike CoreCivic's complaint under the California anti-SLAPP Act, California Civil Procedure Code § 425.16. At a hearing on the motion, counsel for CoreCivic made what the district court considered to be an admission that CoreCivic's facilities had held *parents* separated from their children—in other words, "the other half of the afflicted families."[3]

The district court granted Candide's motion and entered final judgment in its favor on November 19, 2020. In a brief order, the district court determined that, in light of CoreCivic's admission, the family separation statements were "true enough under the First Amendment and under California defamation law" and dismissed the complaint without leave to amend. The district court's order made no mention of the allegedly defamatory statements about CoreCivic's lobbying practices.

"We review an order granting a special motion to strike under California's anti-SLAPP statute de novo." *Herring Networks, Inc. v. Maddow*, 8 F.4th 1148, 1154–55 (9th Cir. 2021). We may affirm the district court's judgment "on any ground supported by the record." *Jones v. Allison*, 9 F.4th 1136, 1139 (9th Cir. 2021).

---

[3] The district court asked, "did CoreCivic house parents who had been separated from their children?" and counsel for CoreCivic replied, "CoreCivic does operate immigrant detention facilities for adults."

II

"California's anti-SLAPP statute allows a defendant to file a 'special motion to strike' a plaintiff's complaint, and involves a two-step inquiry." *Herring*, 8 F.4th at 1155 (quoting Cal. Civ. Proc. Code § 425.16(b)(1)). The first step requires the defendant to "make a prima facie showing that the plaintiff's suit arises from an act in furtherance of the defendant's constitutional right to free speech." *Id.* (quoting *Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 261 (9th Cir. 2013)). At the second step, if, as here, the "anti-SLAPP motion to strike challenges only the legal sufficiency of a claim, a district court should apply the Federal Rule of Civil Procedure 12(b)(6) standard and consider whether a claim is properly stated." *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 834 (9th Cir. 2018). If the special motion succeeds, the defendant is entitled to attorney's fees and costs. Cal. Civ. Pro. Code § 425.16(c).

CoreCivic's primary argument on appeal is that this special motion to strike provision cannot be applied in federal court because it conflicts with Federal Rules of Civil Procedure 8, 12, and 56. Recognizing that this argument is foreclosed by our precedents, CoreCivic insists that we may nonetheless revisit the question due to the Supreme Court's decision in *Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co.*, 559 U.S. 393 (2010). We disagree, and hold that our prior precedents control.

A

In 1999, we decided *United States ex rel. Newsham v. Lockheed Missiles & Space Co.*, which held that California's anti-SLAPP statute applied in federal diversity actions

because there was "no 'direct collision'" between the statute and the relevant federal rules, and the "twin purposes of . . . *Erie*" favored its application. 190 F.3d 963, 972–73 (9th Cir. 1999). In the more than two decades since, we have examined this holding numerous times, weeding out specific provisions of the law that ran afoul of the *Erie* doctrine and fine-tuning our application of those provisions that remained. *See, e.g.*, *Planned Parenthood*, 890 F.3d at 833 (holding that special motions to strike challenging the legal sufficiency of complaints should be evaluated under the 12(b)(6) standard "[i]n order to prevent the collision of California state procedural rules with federal procedural rules"); *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 846 (9th Cir. 2001) (declining to apply the discovery provisions due to a conflict with Rule 56).

Here, CoreCivic asks us, as a three judge panel, to overrule all our Circuit precedent based on *Shady Grove*. As a three-judge panel, we may overrule the decision of a prior panel only where an "intervening higher authority" is "clearly irreconcilable" with the reasoning of that decision. *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc). The durable *Miller* standard is important. It acts to "preserve the consistency of circuit law." *Id.*

Initially, we must note that *Shady Grove* is not *intervening* authority. Since *Shady Grove* was decided, we have routinely applied the California anti-SLAPP statute in federal court. *See, e.g.*, *Herring*, 8 F.4th at 1155; *Planned Parenthood*, 890 F.3d at 934–35; *Maloney v. T3Media, Inc.*, 853 F.3d 1004, 1009–10 (9th Cir. 2017); *Makaeff v. Trump University, LLC*, 715 F.3d 254, 261 (9th Cir. 2013). We are

bound by those precedents, as well as *Newsham*.**[4]** Therefore, CoreCivic's argument fails at the first step. *Shady Grove* simply is not an "intervening higher authority."

Nor is *Shady Grove* "clearly irreconcilable" with circuit law. "[C]learly irreconcilable" is a "high standard." *Rodriguez v. AT & T Mobility Servs. LLC*, 728 F.3d 975, 979 (9th Cir. 2013) (quoting *Lair v. Bullock*, 697 F.3d 1200, 1207 (9th Cir. 2012)). "[I]t is not enough for there to be 'some tension' between the intervening higher authority and the prior circuit precedent." *Id.* Nor is it enough for the "intervening higher authority to 'cast doubt' on the prior circuit precedent." *Lair*, 697 F.3d at 1207 (quoting *United States v. Delgado-Ramos*, 635 F.3d 1237, 1239 (9th Cir. 2011)). "So long as the court can apply our prior circuit precedent without running afoul of the intervening authority it must do so." *United States v. Valencia-Mendoza*, 912 F.3d 1215, 1222 (9th Cir. 2019) (quoting *Close v. Sotheby's, Inc.*, 894 F.3d 1061, 1073 (9th Cir. 2018)). Applying this standard, we conclude that *Shady Grove* is not "clearly irreconcilable" with our precedents.

B

Turning to *Shady Grove* itself, we note initially that *Shady Grove* did not involve an anti-SLAPP statute; it concerned

---

**[4]** *Newsham* has been the subject of a failed en banc call, which sought to overrule it; the call was based at least in part on the Supreme Court's decision in *Shady Grove*. *See Makaeff v. Trump Univ., LLC*, 736 F.3d 1180, 1188 (9th Cir. 2013) (Watford, J., dissenting from denial of rehearing en banc) ("Viewed through *Shady Grove*'s lens, California's anti-SLAPP statute conflicts with Federal Rules 12 and 56."). Although *Newsham* has been questioned, no one has suggested that it should be overruled by a three judge panel.

state law limitations on class actions. In *Shady Grove*, the justices fractured 4-4-1 in deciding that a New York law limiting class actions could not apply in federal court because it conflicted with Federal Rule of Civil Procedure 23. 559 U.S. at 395–406. Justice Stevens, who wrote a one-justice concurrence, also joined the first part of Justice Scalia's opinion, rendering that small section of Justice Scalia's opinion "the majority opinion," and thus clearly binding on this Court. *See id.* at 395. But the majority opinion broke little new ground with respect to the standard for assessing a potential conflict between the federal rules and state law.

The majority opinion made clear that the first step in the analysis was to ask whether the apparently conflicting federal and state rules "answer the same question." *Id.* at 399. CoreCivic seizes on the "answer the same question" language, insisting that it constitutes a new standard that it is irreconcilable with the "direct collision" test applied at the first step in *Newsham*.

But closer examination of the *Shady Grove* majority opinion's step-one analysis casts doubt on CoreCivic's characterization of it as establishing a "new . . . framework." At the outset, the *Shady Grove* majority noted that "[t]he framework for our decision is familiar." *Id.* at 398. It then introduced the "answers the question" language for the first time, citing to the Court's 1987 decision in *Burlington Northern Railroad Co. v. Woods* for support. *Id.* (citing 480 U.S. 1, 4–5 (1987)). The cited section of *Burlington*, in turn, uses the "direct collision" language to describe the appropriate test—the very same language used by the court

in *Newsham* in conducting its step-one analysis.[5]  *See* 480 U.S. at 4–5 ("The initial step is to determine whether, when fairly construed, the scope of [the rule] is 'sufficiently broad' to cause a 'direct collision' with the state law." (quoting *Walker v. Armco Steel Corp.*, 446 U.S. 740, 749–50 (1980))).  The Court did not discard the "direct collision" test; it merely repackaged it.

Our cases confirm this understanding of *Shady Grove*. We have continued to use the "direct collision" language interchangeably with the "same question" language in the wake of the Court's decision.  In *Martin v. Pierce County*, 34 F.4th 1125 (9th Cir. 2022), we asked whether "the Federal Rules answer[ed] the 'same question' as the [Washington] state rule."  *Id.* at 1128 (quoting *Shady Grove*, 559 U.S. at 399).  In concluding that they did, we wrote that one requirement of the Washington law "directly collides with Rule 3's requirement that an action commences with the filing of the complaint."  *Id.* at 1131 (emphasis omitted); *see id.* at 1132 ("As [the Washington rule] answers the "same question" as Rule 3, they directly conflict.").  Similarly, in *Ellis v. Salt River Project Agricultural Improvement & Power District*, 24 F.4th 1262 (9th Cir. 2022), we recited both the "direct collision" and "answers the question" language in determining that an Arizona statute did not conflict with Rule 23.  *Id.* at 1269 (first quoting *Shady Grove*, 559 U.S. at

---

[5] Although the literal meaning of "direct collision" might seem to imply a more stringent standard, the Supreme Court has made clear that this phrase is not to be understood literally.  *See Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 26 n.4 (1988) ("[T]his language is not meant to mandate that federal law and state law be perfectly coextensive and equally applicable to the issue at hand; rather, the 'direct collision' language . . . expresses the requirement that the federal statute be sufficiently broad to cover the point in dispute.").

398; and then quoting *Burlington N. R.R. Co.*, 480 U.S. at 4–5).

Without support from our cases, CoreCivic looks elsewhere. As evidence that *Shady Grove* changed the operative standard, it points to the string of subsequent out-of-circuit decisions refusing to apply various states' anti-SLAPP statutes in federal court. *See La Liberte v. Reid*, 966 F.3d 79, 86–88 (2d Cir. 2020); *Klocke v. Watson*, 936 F.3d 240, 244–49 (5th Cir. 2019); *Carbone v. Cable News Network, Inc.*, 910 F.3d 1345, 1349–57 (11th Cir. 2018); *Los Lobos Renewable Power, LLC v. AmeriCulture, Inc.*, 885 F.3d 659, 668–73 (10th Cir. 2018); *Abbas v. Foreign Pol'y Grp., LLC*, 783 F.3d 1328, 1333–37 (D.C. Cir. 2015).

Of course, those cases do not bind our Court. But, more importantly, the outcomes of these cases do not demonstrate that *Shady Grove* changed the applicable standard in such a way as to render it "clearly irreconcilable" with *Newsham* and *Planned Parenthood*. To begin with, none of these out-of-circuit decisions explicitly casts aside the "direct collision" test as a mode of analysis. In fact, the Eleventh Circuit's decision in *Carbone* recited the "direct collision" language as part of its *Shady Grove* analysis. *See* 910 F.3d at 1351 ("The result is a 'direct collision' between the Federal Rules and the motion-to-strike provision of the Georgia Statute.").

Further, our sister circuits have not *uniformly* decided that anti-SLAPP statutes cannot apply in federal court following *Shady Grove*. The First Circuit held that Maine's anti-SLAPP statute could apply in federal court under a *Shady Grove* analysis. *See Godin v. Schencks*, 629 F.3d 79, 86 (1st Cir. 2010). And it did so while citing approvingly to the

reasoning of *Newsham*. *See id.* at 91 ("In sum, 'there is no indication that Rules . . . 12 and 56 were intended to "occupy the field" with respect to pretrial procedures aimed at weeding out meritless claims.'" (quoting *Newsham*, 190 F.3d at 972)).

Finally, to the extent that *Shady Grove* altered the relevant inquiry at all, it remains reconcilable with our precedents after our decision in *Planned Parenthood*. Most of the out-of-circuit cases refusing to apply state anti-SLAPP statutes have grounded their reasoning in conflicts between those statutes' heightened pleading standards and the standards dictated by Rules 8, 12, and 56. *See La Liberte*, 966 F.3d at 87; *Klocke*, 936 F.3d at 246; *Carbone*, 910 F.3d at 1350–51; *Abbas*, 783 F.3d at 1334. No such conflict exists in this Circuit; we have made clear that challenges to the legal sufficiency of a defamation claim made pursuant California's anti-SLAPP statute must be analyzed under the same standard as Rule 12(b)(6) motions to dismiss, and challenges to factual sufficiency under the same standard as Rule 56 motions for summary judgment. *See Planned Parenthood*, 890 F.3d at 834.

In sum, *Shady Grove* is not "intervening controlling authority," because we have applied California's anti-SLAPP statute after Shady Grove was decided and are bound by those precedents. Further, even if it qualified as "intervening authority, " *Shady Grove* did not put forward a new framework; it merely "framed the 'direct collision' inquiry in a new way." *Makaeff*, 736 F.3d at 1181 (Wardlaw and Callahan, JJ., concurring in denial of rehearing en banc). To the extent this reframing changed the inquiry at all, it can nonetheless be reconciled with *Planned Parenthood*. Accordingly, we "can apply our prior circuit precedent

without running afoul of the intervening authority." *Valencia-Mendoza*, 912 F.3d at 1222. And because we can, we must. *Id.*

### III

Given our conclusion that California's anti-SLAPP statute applies, we next turn to the merits of Candide's anti-SLAPP motion. Because CoreCivic does not contest on appeal that the suit implicates Candide's First Amendment rights, we need only determine—applying the 12(b)(6) standard— whether CoreCivic stated a claim for defamation under California law. *Planned Parenthood*, 890 F.3d at 834. Under the familiar plausibility pleading analysis, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face" in order to survive a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted).

With respect to the claims reached by the district court—those concerning the family separation statements— we conclude that CoreCivic's express defamation theory fails because it did not adequately plead falsity, and that its implied defamation theory fails because its proffered interpretation of Simon's statements is implausible.

### A

In defamation actions against public figures or involving statements about matters of public concern, a plaintiff must plead that the allegedly defamatory statements are false. *Indus. Waste & Debris Box Serv., Inc. v. Murphy*, 4 Cal. App. 5th 1135, 1156, 208 Cal. Rptr. 3d 853, 869 (Cal. Ct. App. 2016). On appeal, CoreCivic does not contest that the

challenged statements implicate matters of public concern. In order to plead falsity, a plaintiff must deny the "substance" of the charge. *Vogel v. Felice*, 127 Cal. App. 4th 1006, 1021, 26 Cal. Rptr.3d 350, 362 (Cal. Ct. App. 2005).

CoreCivic failed to contest the substance of the charges made against it in Simon's articles.    In its complaint, CoreCivic made a very specific denial. It stated that it "does not, nor has it ever, operated any immigration detention facilities for children separated from their parents pursuant to the government's family separation policy."   But Simon never said that CoreCivic had done so.  Instead, the substance of Simon's charge—as actually made—was much broader; it was that CoreCivic was involved in the business of family separation and incarceration at the border. CoreCivic's complaint did not plead otherwise.

## B

"[E]ven if a statement is literally accurate, defamation may be proven if it has a false implication."  *Hawran v. Hixson*, 209 Cal. App. 4th 256, 293, 147 Cal. Rptr. 3d 88, 120 (Cal. Ct. App. 2012).  CoreCivic pleaded in the alterative that Simon's statements *implied* that it had held children separated from their parents pursuant to the government's family separation policy, even if they did not say so directly.  And CoreCivic has pleaded falsity with respect to *that* charge.

"To state a claim for implied defamation, however, the published statement must reasonably be understood as implying the alleged defamatory content."  *Price v. Stossel*, 620 F.3d 992, 1003 (9th Cir. 2010) (quoting *Weller v. Am. Broad. Cos*. *Inc.*, 232 Cal. App. 3d 991, 1001 n.8, 283 Cal. Rptr. 644, 650 (Cal. Ct. App. 1991)) (internal quotation

marks omitted).  In making such a determination, we "must . . . refrain from scrutinizing what is not said to find a defamatory meaning which the article does not convey to a lay reader." *Forsher v. Bugliosi*, 26 Cal. 3d 792, 803 (1980) (internal quotation marks and citation omitted).  CoreCivic thus asks us to hold that it would be "reasonable" to interpret Simon's general statements tying CoreCivic to "family separation" as implying a very specific factual assertion— namely, that CoreCivic held children separated from their parents in its facilities.  We cannot do so.

Principally at issue here are the statements that "CoreCivic . . . manag[es] some of the detention centers that have been at the heart of the controversy over the separation of families and incarceration of individuals for crossing the US border," and the statement that "CoreCivic . . . hold[s] contracts to operate detention centers, and [is] profiting off the pain and separation of families."  CoreCivic argues these statements imply a defamatory meaning when read together with Simon's statement that "the terminology of 'family separation' tends to focus on the detention of children."  But this argument elides important context.  The statement that "family separation tends to focus on the detention of children" did not appear in Simon's original article; it was added as part of a "clarification" in response to CoreCivic's complaints about the article.  And the apparent purpose of this clarification was to convey that CoreCivic had *not* detained children; it included a direct quote from CoreCivic that "CoreCivic does not and has never housed children separated from their parents pursuant to the Trump family separation policy."  Thus, the only explicit link between family separation and the specific act of detaining children separated from their parents came in the context of Simon

clearly stating that CoreCivic *did not* detain such children.[6] It would not be reasonable to understand these statements in a manner contrary to this clear context.

CoreCivic also points to a picture included in the September 25, 2018 article that it claims "drove home [the] connection of CoreCivic to family separation *and* 'the detention of children' visually." While we have held that a photograph can be the basis for a defamation by implication claim, we did so in circumstances that bear little resemblance to this case. In *Manzari v. Associated Newspapers Ltd.*, 830 F.3d 881 (9th Cir. 2016), we held that the publication of an image of a pornographic actor in a news article could be reasonably understood to imply that the pictured actor had tested positive for HIV where the image visibly included her professional name, the caption beneath the image stated that "a performer had tested HIV positive," and the headline, which appeared four sentences above the photo, also stated that a "female performer" had tested positive for HIV. *Id.* at 890.

The image in question here depicts marching protestors holding signs. The text of two signs are clearly visible. One says, "I Am A Child" and the other says, "Families Belong

---

[6] The only explicit mentions of "children" in any of Simon's original articles came in two "answers" in an interview section of Simon's September 25, 2018 piece. The first answer that discussed children not only did not mention CoreCivic, but also made clear that it was discussing conditions in *federal facilities*, rather than private facilities. The second answer did mention CoreCivic. But it did so in a separate paragraph from its mention of children and in a clearly distinct context: criticizing the private prison industry for "cut[ting] back on staff training and medical care" at their facilities, and citing specific CoreCivic facilities as examples of detention centers where multiple detainees have died.

Together."   The protestors are also holding a string of garments emblazoned with the slogan "Moms Rising Against Family Separation."   While the image clearly evokes the family separation issue as a whole, none of the clearly visible signs explicitly reference the detention of children and nothing in the image references CoreCivic or private prisons more broadly.  Unlike in *Manzari*, neither the caption beneath the picture nor the headline of the article implies any connection to the supposedly implied defamatory statement; the caption reads only "Mom's Rising," and the headline of the article is "What Do Big Banks Have To Do With Family Detention? #FamiliesBelongTogether Explains."

Taking together the challenged statements, the image, and other relevant context,  we conclude that Simon's articles cannot reasonably be understood as implying that CoreCivic detained children separated from their parents in its facilities. As a result, CoreCivic's defamation by implication claim was properly dismissed.

IV

CoreCivic pleaded distinct theories of express and implied defamation grounded in Simon's statements about its lobbying practices.  The district court did not address the lobbying statements in its order dismissing the case. "In general, an appellate court does not decide issues that the trial court did not decide." *Planned Parenthood of Greater Wash. & N. Idaho v. U.S. Dep't of Health & Hum. Servs.*, 946 F.3d 1100, 1110 (9th Cir. 2020).  We decline to invoke any of the permissive exceptions to this general rule that may be applicable here. *See id.*  Instead, we vacate the judgment with respect to these claims and remand to the district court.

V

The special motion to strike provision of California's anti-SLAPP statute applies in federal court. We affirm the district court's dismissal of CoreCivic's family separation statement defamation claims pursuant to that provision. We vacate and remand the judgment of the district court with respect to CoreCivic's lobbying statement defamation claims. Each party shall bear its own costs on appeal.

**AFFIRMED     IN     PART;     VACATED     AND REMANDED IN PART.**

BEA, Circuit Judge, dissenting:

I agree with the majority that California's anti-SLAPP motion is applicable in federal court, and that the Supreme Court's decision in *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.* (2010) did not abrogate our court's precedents so stating. I also agree that the district court properly granted Candide's anti-SLAPP motion on CoreCivic's express defamation claim for failure to plead falsity, and that the lobbying-based defamation claims should be remanded to the district court. I part ways from the majority on the sole issue of Candide's implied defamation claim because, on that claim, the district court erred in granting Candide's anti-SLAPP motion.

To state a claim for implied defamation under California law, "the court must first determine as a question of law whether the statement is reasonably susceptible of a defamatory interpretation; if the statement satisfies this

requirement, it is for the jury to determine whether a defamatory meaning was in fact conveyed to the listener or reader." *Bently Reserve LP v. Papaliolios*, 218 Cal. App. 4th 418, 428 (Cal. Ct. App. 2013) (internal quotation marks omitted). Indeed, "even if a statement is literally accurate, defamation may be proven if it has a false implication." *Hawran v. Hixson*, 209 Cal. App. 4th 256, 293 (Cal. Ct. App. 2012). A statement can sustain a claim for implied defamation based on its context, including surrounding photographs and captions. *See Manzari v. Associated Newspapers Ltd.*, 830 F.3d 881 (9th Cir. 2016).

Candide published statements accusing CoreCivic of "profit[ing] off the pain and separation of families" and "manag[ing] some of the detention centers that have been at the heart of the controversy over the separation of families . . . crossing the US border." These statements were published below a large photograph depicting protesters. One protester is seen carrying a sign which has "I am a child" written in uppercase letters in a bold font. Other protesters carry baby clothes printed with the words "Moms rising against family separation." Above the photograph, the article included two tweets: "Every child, no matter where he or she is born, deserves to be tucked into a safe bed to sleep," and "We strongly believe there simply shouldn't be a profit motive to incarcerating children and families."

I agree with the majority that neither the defamatory statements nor the photograph "explicitly" reference the detention of children by CoreCivic. But that is precisely the point. The statements did not need *explicitly* to accuse CoreCivic of housing separated children to give rise to a claim of *implied* defamation. By referring to separated *families*, rather than separated *children* or separated *parents*

specifically, we agree that the defamatory statements maintain a certain level of generality. But while this generality ensures the literal truth of the statement, a reasonable reader could still interpret the statement to imply the untruth that CoreCivic houses children separated from their parents. The use of the word family strongly connotes the presence of children. In fact, the first entry defining family in *Merriam-Webster's Dictionary* is "the basic unit of society traditionally consisting of two parents rearing their children." *Family*, Merriam-Webster's Dictionary Online, https://www.merriam-webster.com/dictionary/family (last visited Aug. 19, 2022).

Because of this connotation, the statement that CoreCivic "profit[s] from the pain and separation of families" equally lends itself to the innocent interpretation suggested by Candide (that CoreCivic houses parents separated from their children, but not children separated from their parents) and the defamatory interpretation suggested by CoreCivic (that CoreCivic houses children separated from their parents).

One innocent interpretation cannot save a statement that also reasonably lends itself to defamatory interpretations. *See MacLeod v. Tribune Pub. Co.*, 52 Cal. 2d 536, 549 (Cal. 1959) (en banc) ("The fact that an implied defamatory charge or insinuation leaves room for innocent interpretations as well does not establish that the defamatory meaning does not appear from the language itself . . . [I]t is reasonable to assume that at least some of the readers will take it in its defamatory sense."). The district court usurped the role of the jury when it granted the anti-SLAPP motion and chose which among these three equally reasonable interpretations was actually conveyed to readers.

The defamatory interpretation is all the more reasonable in light of the full context of the article, including the juxtaposition of the defamatory statements with the imagery of children's clothes, "I am a child" signage, and references to children being tucked into bed.

In *Manzari*, 830 F.3d at 884, a pornographic actress sued a tabloid newspaper for running an article titled "PORN INDUSTRY SHUTS DOWN . . . AFTER 'FEMALE PERFORMER' TESTS POSITIVE FOR HIV," which included a photograph of the plaintiff and her stage name. *Id.* Evaluating "the totality of the circumstances of the publication" and "the publication as a whole," we held that the article gave rise to a claim for implied defamation because the "vague references to the unidentified 'female performer' [did] not clarify that the article [was] not about [the plaintiff.]" *Id.* at 890 (internal citations omitted). CoreCivic's case is directly on point. While Candide's article contained "vague references" to family separation generally, the imagery of baby clothes and tucking children into bed clearly referred to the housing of separated minors. The majority's attempt to distinguish *Manzari* falls flat. They argue that, in that case, the plaintiff's stage name was clearly depicted in the surrounding photograph, but here, the photograph does not make explicit reference to CoreCivic. But the holding of *Manzari* was not so limited. Rather, as here, it is the publication "as a whole," that supported the implied defamation claim.

The majority also makes a strawman of CoreCivic's argument relating to Candide's subsequently published clarification. Several months after the statements at issue were published, Candide issued an updated version of the article with a clarification that read, in part, "the terminology

of 'family separation' tends to focus on the detention of children . . . ." The majority claims that CoreCivic argues that the statements at issue imply a defamatory meaning when read in conjunction with Candide's clarification. That is not accurate. Rather, CoreCivic argues (and I agree), that because the family-separation controversy focuses on the detention of separated children, Candide's clarification was an *admission* that its statements connecting CoreCivic to family separation *implied* that CoreCivic was involved in the detention of separated children.

Because the statements at issue are reasonably susceptible to a defamatory interpretation on their face and are juxtaposed with a photograph and captions which only emphasize that defamatory meaning, the district court erred in granting Candide's anti-SLAPP motion on CoreCivic's implied defamation claim. A jury should be allowed to decide whether a defamatory meaning was conveyed to readers. I respectfully dissent.