**ORDERED PUBLISHED**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>ALICIA MARIE RICHARDS,<br>　　　　　Debtor. | BAP No.　CC-22-1241-GFL<br><br>Bk. No. 8:21-bk-10635-SC |
| ALICIA MARIE RICHARDS,<br>　　　　　Appellant,<br>v.<br>RYAL W. RICHARDS; KEVIN E.<br>ROBINSON,<br>　　　　　Appellees. | Adv. No. 8:22-ap-01056-SC<br><br>**OPINION** |

Appeal from the United States Bankruptcy Court
for the Central District of California
Scott C. Clarkson, Bankruptcy Judge, Presiding

APPEARANCES:

Appellant Alicia Marie Richards, pro se, on the brief; Kevin E. Robinson for Appellees Ryal W. Richards and Kevin E. Robinson.

Before: GAN, FARIS, and LAFFERTY, Bankruptcy Judges.

GAN, Bankruptcy Judge:

## INTRODUCTION

Chapter 7[1] debtor Alicia Marie Richards ("Debtor") appeals the bankruptcy court's order striking her cross-complaint with prejudice. Applying California's "anti-SLAPP" statute, the court granted the special motion to strike filed by cross-defendants and appellees Ryal W. Richards and Kevin E. Robinson (together "Appellees"). Each of Debtor's claims was premised on purported actions by Appellees in a prior state court dissolution proceeding. We find no error in the bankruptcy court's decision to strike the cross-complaint under the anti-SLAPP statute. And contrary to Debtor's argument on appeal, the bankruptcy court had constitutional and statutory authority to enter a final order. Accordingly, we AFFIRM.

We publish to highlight the necessity of clearly objecting to entry of final orders where a party asserts a right to de novo review by an Article III court, and to explain that a party who makes an undisputed assertion that claims are core consents to entry of final orders by the bankruptcy court.

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

# FACTS[2]

## A.    Prepetition events

Debtor and Mr. Richards were married and owned, as husband and wife in joint tenancy, a residence in Newport Beach, California (the "Property"). In 2015, Mr. Richards commenced divorce proceedings in state court, and Debtor and Mr. Richards eventually stipulated to entry of a dissolution judgment. The stipulation gave Debtor several weeks to refinance the Property and buy out Mr. Richards's community property interest. If Debtor was unable or unwilling to do so, the stipulation required the Property to be sold with proceeds divided equally. In 2018, the state court entered a final dissolution judgment in accordance with the stipulation.

Debtor was unable to buy out Mr. Richards's interest, and she failed to cooperate with the required sale. Instead, she moved to set aside the stipulation based on fraud and duress. The state court denied her motion, and the California Court of Appeal affirmed. *In re Marriage of Richards*, Case No. G055927, 2020 WL 104357, at *9-13 (Cal. Ct. App. Jan 9, 2020).

Although she had not appealed the dissolution judgment, Debtor filed several post-judgment motions to stop its enforcement and prevent the sale of the Property. The state court denied each of her motions, and

---

[2] We exercise our discretion to take judicial notice of documents electronically filed in the adversary proceeding and main bankruptcy case. *See Atwood v. Chase Manhattan Mortg. Co. (In re Atwood)*, 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

3

none of her appeals were successful. In disposing of Debtor's fifth appeal, the Court of Appeal noted, "[c]ontrary to [Debtor's] contention on appeal, the former couple's respective rights concerning the Property were determined long ago by the final marital dissolution judgment." *In re Marriage of Richards*, Case No. G057803, 2020 WL 5902889, at *5 (Cal. Ct. App. Oct. 6, 2020).

**B.     Debtor's bankruptcy and the present adversary proceeding**

In July 2019, the state court entered an order granting Mr. Richards exclusive use, possession, and control of the Property. Mr. Richards sought to evict Debtor, and after an unsuccessful chapter 13 filing and a second eviction attempt, Debtor filed the current chapter 7 case in March 2021.

Debtor scheduled the Property as an asset of her bankruptcy estate and listed it as community property. In May 2021, Mr. Richards sought stay relief to pursue claims in state court, including modification of child support and custody orders, a claim for attorney's fees, and permission to evict Debtor and sell the Property. The bankruptcy court granted stay relief to allow all matters before the state court to proceed, except for those related to the sale of the Property and Debtor's eviction. The chapter 7 trustee then obtained an order from the bankruptcy court authorizing a sale of the Property, free and clear of all liens and interests, to a third-party purchaser for a price substantially higher than the aggregate amount of liens against the Property. Debtor and her father, Lawrence Remsen, each objected and appealed, and we affirmed. *Richards v. Marshack (In re*

4

*Richards)*, BAP Nos. CC-21-1262-SGL; CC-21-1266-SGL, 2022 WL 16754394, at *1 (9th Cir. BAP Nov. 7, 2022), *appeal docketed*, Case No. 22-60058 (9th Cir. Dec. 15, 2022).

In September 2022, Mr. Remsen filed the present adversary complaint, alleging breach of contract against Debtor based on an agreement to transfer the Property to the Remsen Family Trust for the benefit of Mr. Remsen's grandchildren.[3] He also asserted claims against Appellees for interference with contract and abuse of bankruptcy process. Mr. Remsen sought declaratory relief that his contract with Debtor was valid, the Property belonged to his trust, and the dissolution judgment—which required the Property to be sold—was void. Appellees filed a motion to dismiss, which the court granted with prejudice.

In response to Mr. Remsen's complaint, Debtor filed an answer and a cross-complaint against Appellees. She alleged claims for: (1) declarative relief that the dissolution judgment was void; (2) declarative relief that structural error occurred in the family court; (3) fraudulent transfer based on the dissolution judgment causing the Property to become community property after the stipulation made it her separate property; (4) declaratory relief that the state court's vexatious litigant order was void; (5) breach of fiduciary duty against Mr. Richards based on his financial decisions during

---

[3] Mr. Remsen filed a proof of claim based on the alleged contract. The bankruptcy court sustained the trustee's objection and disallowed the claim with prejudice. That order is the subject of a concurrent appeal, BAP No. CC-23-1007-LGF.

the dissolution proceeding and by causing the dissolution judgment to be entered; (6) declaratory relief that the stipulation—and not the dissolution judgment—was binding; (7) breach of contract against Mr. Richards based on the stipulation; (8) breach of oral contract against Mr. Richards based on the stipulation; (9) intentional infliction of emotional distress based on actions in the divorce proceeding; (10) equitable estoppel related to the stipulation; and (11) promissory fraud based on the stipulation.

Debtor asserted that the bankruptcy court had jurisdiction and her claims were "core." However, she also included the statement:

> To the extent any claim for relief contained herein is determined not [sic] to be a non-core proceeding or a *Stern*-claim, Cross Complainant does not give her consents [sic] to the entry of final judgment and orders by the Bankruptcy Court. Cross-Complainant reserves her right to request leave of court to pursue non-core or Stern-claims in the District Court.

*Cross-Complaint*, Aug. 22, 2022, p.2.

## C. Appellees' motion to strike and the court's ruling

Appellees then filed a special motion to strike under the so-called anti-SLAPP provision of California law, Code of Civil Procedure ("CCP") § 425.16.[4] They argued that all of Debtor's claims pertained to alleged

---

[4] "SLAPP" means "Strategic Lawsuits Against Public Participation." The anti-SLAPP statute provides:

> A cause of action against a person arising from any act of that person in furtherance of that person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike,

actions and statements made by Appellees in the state court dissolution proceeding, which constituted protected conduct under the anti-SLAPP statute. Appellees further asserted that the alleged statements and conduct were protected by the "litigation privilege" of California Civil Code ("CCC") § 47(b), and Debtor failed to comply with CCC § 1714.10, which requires a court order prior to naming an attorney as a defendant in a conspiracy action based on his representation of a client. Appellees sought an order striking all claims in the cross-complaint and an award of attorney's fees and costs under CCP § 425.16(c).

In opposition, Debtor argued the motion to strike was untimely. She maintained that some of her claims were based solely on federal law and thus, could not be struck under the anti-SLAPP statute. Debtor argued that her allegations did not involve protected conduct under CCP § 425.16, and she had a reasonable probability of prevailing on the merits. She requested an opportunity to conduct discovery, and she sought leave to file an amended complaint to add a cause of action under 42 U.S.C. § 1983 based on her allegation that Appellees conspired with state court judges to prevent the dissolution judgment from being overturned. Debtor stated that she did not consent to entry of final orders on non-core claims. [5]

---

unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim.

CCP § 425.16(b)

[5] Debtor's opposition included the statement:

Cross-Complaint [sic] does not consent to this bankruptcy court, a non-

Although she requested a hearing to determine which causes of action were non-core, she did not assert that any of her claims were non-core.

After a hearing, the bankruptcy court granted Appellees' motion and entered a written order striking Debtor's cross-complaint with prejudice. Pursuant to CCP § 425.16(c), the bankruptcy court awarded Appellees $6,190 for attorney's fees and costs.[6] Debtor timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(1). We have jurisdiction under 28 U.S.C. § 158.

## ISSUES

Did the bankruptcy court have authority to enter a final order?

Did the bankruptcy court err by granting Appellees' special motion to strike?

Did the bankruptcy court abuse its discretion by awarding attorney's fees and costs?

---

Article III court making final orders in this matter on any of the non-core issues and this court is required to submit its findings and conclusions of law on all non-core causes of action to the District Court. Debtor requests a hearing to be held to determine which causes of action brought in Cross-Complainant's complaint are core and which are non-core.

*Opposition to Cross-Defendants' Motion to Strike*, Oct. 11, 2022, p.8-9.

[6] Because the bankruptcy court previously dismissed Mr. Remsen's complaint with prejudice, the order dismissing Debtor's cross-complaint was a final order.

## STANDARDS OF REVIEW

Whether the bankruptcy court has authority to enter a final order is an issue we review de novo. *See Hasse v. Rainsdon (In re Pringle)*, 495 B.R. 447, 455 (9th Cir. BAP 2013). We also review de novo a bankruptcy court's decision to grant an anti-SLAPP motion. *Restaino v. Bah (In re Bah)*, 321 B.R. 41, 44 (9th Cir. BAP 2005). Under de novo review, we "consider a matter anew, as if no decision had been made previously." *Francis v. Wallace (In re Francis)*, 505 B.R. 914, 917 (9th Cir. BAP 2014).

We review the bankruptcy court's award of attorney's fees and costs under the anti-SLAPP statute for abuse of discretion. *Graham-Sult v. Clainos*, 756 F.3d 724, 751 (9th Cir. 2014). A bankruptcy court abuses its discretion if it applies an incorrect legal standard or its factual findings are illogical, implausible, or without support in the record. *TrafficSchool.com v. Edriver Inc.*, 653 F.3d 820, 832 (9th Cir. 2011).

## DISCUSSION

Debtor's primary argument on appeal is that the bankruptcy court lacked authority to enter a final order disposing of her cross-complaint because she did not consent to entry of final orders on non-core claims. She also contends the court erred by granting the special motion to strike because the motion was untimely, the alleged misconduct was not protected under the anti-SLAPP statute, and the court should have granted her leave to amend the cross-complaint. Debtor argues she had a

9

reasonable probability of success on her claims and the court abused its discretion by awarding attorney's fees and costs.

## A. The bankruptcy court had statutory and constitutional authority to enter a final order.

Pursuant to 28 U.S.C. § 1334, district courts have original jurisdiction over bankruptcy cases and proceedings and may refer both "core" and "non-core" proceedings to the bankruptcy court.[7] "When a district court refers a case to a bankruptcy judge, that judge's statutory authority depends on whether Congress has classified the matter as a 'core proceeding' or a 'non-core proceeding[.]'" *Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665, 670 (2015) (brackets omitted).

The bankruptcy court can enter final orders, reviewable on appeal, in core proceedings. *Id.* In non-core proceedings, the bankruptcy court is required to submit proposed findings of fact and conclusions of law to the district court.[8] 28 U.S.C. § 157(c). In such cases, "any final order or

---

[7] "Core" proceedings include those listed under 28 U.S.C. § 157(b)(2), as well as any proceeding in bankruptcy "that invokes a substantive right provided by title 11 or a proceeding that, by its nature, could arise only in the context of a bankruptcy case." *Gruntz v. Cnty. of L.A. (In re Gruntz)*, 202 F.3d 1074, 1081 (9th Cir. 2000) (en banc) (cleaned up). Conversely, "non-core" proceedings "do not depend on the Bankruptcy Code for their existence and they could proceed in another court." *Dunmore v. United States*, 358 F.3d 1107, 1114 (9th Cir. 2004).

[8] Congress implemented the bifurcated scheme of 28 U.S.C. § 157 in response to *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 53 (1982) (plurality opinion), in which the Supreme Court held that Congress cannot vest bankruptcy courts with judicial power reserved for courts "whose judges enjoy the protections and safeguards specified in" Article III of the Constitution. *See Wellness Int'l Network, Ltd.*, 575 U.S. at 669-70 (discussing history of the statutory scheme); *Exec.*

judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected." *Id.* "There is one statutory exception to this rule: If all parties consent, the statute permits the bankruptcy judge to hear and determine and to enter appropriate orders and judgments as if the proceeding were core." *Exec. Benefits Ins. Agency*, 573 U.S. at 34 (citing 28 U.S.C. § 157(c)(2)) (cleaned up).

Because the statutory scheme of 28 U.S.C. § 157 depends on the nature of the claims and whether the parties consent to entry of final orders, the Bankruptcy Rules require litigants to state at the initial pleading stage whether they consent. *See* Rule 7008 (requiring party filing adversary complaint or cross-complaint to provide the jurisdictional basis for the bankruptcy court and "a statement that the pleader does or does not consent to entry of final orders of judgment by the bankruptcy court"); Rule 7012(b)(1) ("A responsive pleading shall include a statement that the

---

*Benefits Ins. Agency v. Arkison*, 573 U.S. 25, 31-34 (2014) (same). In *Stern v. Marshall*, 564 U.S. 462 (2011), the Supreme Court clarified that some claims (since referred to as "*Stern* claims") which are statutorily defined as "core," may nonetheless entitle litigants to Article III adjudication. However, as explained below, the bankruptcy court may treat *Stern* claims as non-core and enter final orders with consent of the parties. *See Exec. Benefits Ins. Agency*, 573 U.S. at 36 (holding *Stern* claims may proceed as non-core within the meaning of 28 U.S.C. § 157(c)); *Wellness Int'l Network Ltd.*, 575 U.S. at 678-89 (holding bankruptcy courts may enter final orders on *Stern* claims with consent). Thus, if the parties consent, a bankruptcy court has both constitutional and statutory authority to enter final orders.

11

party does or does not consent to entry of final orders or judgment by the bankruptcy court.").

In the cross-complaint, Debtor asserted the bankruptcy court had jurisdiction and that her claims were core. Appellees never disputed Debtor's characterization. "An allegation that the proceeding is core serves as an express consent for the bankruptcy court to treat that proceeding as core and enter a final order in that proceeding." *Resource Funding, Inc. v. Pac. Cont'l Bank (In re Wash. Coast I, L.L.C.)*, 485 B.R. 393, 408 (9th Cir. BAP 2012) (cleaned up).

On appeal, Debtor argues the bankruptcy court exceeded its constitutional and statutory authority by entering a final order on non-core claims. However, the bankruptcy court never determined the claims were non-core, and it had no basis to do so because the issue was never in dispute.[9] The cross-complaint indicated that Debtor did not consent to entry of final orders "to the extent" the court determined the claims were non-core. But Debtor never argued the claims were non-core, and instead, maintained throughout the case that her claims were core.[10]

---

[9] Debtor also did not argue that her claims were S*tern* claims in the bankruptcy court or in her opening brief. Thus, she has waived the issue. *See Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999).

[10] Even on appeal, Debtor argues her claims were core. She erroneously contends the bankruptcy court decided they were non-core, and she disputes the alleged determination. *See Appellant's Opening Brief*, p.20 n.4. Although the bankruptcy court decided the anti-SLAPP statue was applicable to all of Debtor's claims, it did not expressly decide whether the claims were core or non-core. *See* 28 U.S.C. § 157(b)(3) ("A determination that a proceeding is not a core proceeding shall not be made solely on the

In other words, Debtor's non-consent was contingent on a court determination that the claims were non-core—a contingency which never occurred because the parties were content to have the bankruptcy court treat the claims as core.[11] Based on the parties' consent, the bankruptcy court properly treated the claims as core and entered a final order pursuant to 28 U.S.C. § 157(c)(2).

Furthermore, the statutory scheme of 28 U.S.C. § 157 merely ensures that any party to a non-core proceeding can choose to have de novo review and final adjudication by an Article III court. If a bankruptcy court exceeds its statutory or constitutional authority and enters a final order in a non-core proceeding without consent of the parties, Rule 8018.1 provides the remedy. Pursuant to that rule, if a district court determines the bankruptcy court lacked authority to enter a final order, it can simply treat the order as proposed findings of fact and conclusions of law and perform the

---

basis that its resolution may be affected by State law.").

[11] Debtor's failure to characterize the claims as non-core and clearly object to entry of final orders has consequences. Her belated claim of non-consent fails because she always maintained the claims were core. Though we are puzzled why a litigant would seek relief from the bankruptcy court on purportedly core claims, yet withhold consent if the court determined otherwise, the Bankruptcy Rules require parties to clearly state their non-consent to avert gamesmanship or sandbagging. *See Stern*, 564 U.S. at 482 ("[T]he consequences of a litigant sandbagging the court—remaining silent about his objection and belatedly raising the error only if the case does not conclude in his favor—can be particularly severe." (cleaned up)); *see also Exec. Benefits Ins. Agency v. Arkison (In re Bellingham Ins. Agency, Inc.)*, 702 F.3d 553, 570 (9th Cir. 2012) ("Having lost before the bankruptcy court, [a party] cannot assert a right it never thought to pursue when it still believed it might win." (citation omitted)), *aff'd*, 573 U.S. 25 (2014).

necessary de novo review. Moreover, a district court effectively cures any constitutional infirmity by reviewing a bankruptcy appeal when the standard of review is de novo. *Exec. Benefits Ins. Agency*, 573 U.S. at 39-40.

Therefore, Debtor could have had Article III review simply by electing to have this appeal heard in the district court. Instead, she opted to proceed before this Panel. The right to review by an Article III court is "a personal right and thus ordinarily subject to waiver." *Wellness Int'l Network Ltd.*, 575 U.S. at 678 (cleaned up). Consequently, even if we assume the bankruptcy court determined the claims were non-core and Debtor clearly withheld consent, she likely waived her right to district court review by electing to have the appeal heard by the BAP. *See* 28 U.S.C. § 158(c)(1) (describing procedure for BAP appeal and permitting any party to elect district court appellate review). Debtor's foremost argument on appeal is that the bankruptcy court deprived her of Article III review by the district court, yet she knowingly and voluntarily elected review by this Panel instead of the district court.

## B.    Law governing application of the anti-SLAPP statute

California's anti-SLAPP statute "was enacted in order to provide for the early dismissal of meritless suits aimed at chilling the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances." *In re Bah*, 321 B.R. at 44-45 (quoting *Globetrotter Software, Inc. v. Elan Comput. Grp., Inc.*, 63 F. Supp. 2d 1127, 1128 (N.D. Cal. 1999)).

14

In deciding a special motion to strike under CCP § 425.16(b), courts first ask "whether 'the claim call[s] for the anti-SLAPP statute's protections,' and, if so, whether the claim has 'sufficient merit.'" *Gunn v. Drage*, 65 F.4th 1109, 1118 (9th Cir. 2023) (quoting *Serova v. Sony Music Ent.*, 13 Cal. 5th 859 (2022)). The "moving defendant must make a *prima facie* showing that the plaintiff's suit arises from an act in furtherance of the defendant's constitutional right to free speech." *Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 261 (9th Cir. 2013). If the defendant satisfies the first step, "the burden shifts to the plaintiff to demonstrate that each challenged claim based on protected activity is legally sufficient and factually substantiated." *Gunn*, 65 F.4th at 1118 (quoting *Baral v. Schnitt*, 1 Cal. 5th 376, 384 (2016)).

The Ninth Circuit has repeatedly affirmed the applicability of California's anti-SLAPP statute to state law claims in federal court and has specifically held that CCP § 425.16(b) (special motion to strike) and CCP § 425.16(c) (providing for attorney's fees and costs) may properly be invoked in federal court. *United States ex. Rel. Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963, 970-73 (9th Cir. 1999). But it has "also recognized that some provisions of California's anti-SLAPP law cannot apply in federal practice." *Gunn*, 65 F.4th at 1119 (citations omitted).

"Procedural state laws are not used in federal court if to do so would result in a 'direct collision' with a Federal Rule of Civil Procedure." *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 845-46 (9th Cir. 2001) (citing

15

*Walker v. Armco Steel Corp.*, 446 U.S. 740, 749-50 (1980)). Thus, throughout the years, the Ninth Circuit has sought to "weed[] out specific provisions of the law that ran afoul of the *Erie* doctrine and fine-tun[e] [its] application of those provisions that remained." *Gunn*, 65 F.4th at 1119 (quoting *CoreCivic, Inc. v. Candide Grp., LLC*, 46 F.4th 1136, 1140 (9th Cir. 2022)).

Because the dismissal standard of the anti-SLAPP statute would otherwise impermissibly collide with federal procedure, bankruptcy courts must apply the Civil Rule 12(b)(6) standard when an anti-SLAPP motion challenges only the legal sufficiency of a claim. *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 834 (9th Cir. 2018). And because granting a defendant's anti-SLAPP motion without leave to amend would directly collide with Civil Rule 15(a), made applicable by Rule 7015—and its policy favoring liberal amendment—courts must consider whether to grant leave to amend when striking a cause of action under the anti-SLAPP statute. *Verizon Del., Inc. v. Covad Commc'ns Co.*, 377 F.3d 1081, 1091 (9th Cir. 2004).

Thus, the bankruptcy court must treat such a motion "in the same manner as a motion under [Civil] Rule 12(b)(6) except that the attorney's fee provision of [CCP] § 425.16(c) applies." *Planned Parenthood Fed'n of Am., Inc.*, 890 F.3d at 834 (quoting *Rogers v. Home Shopping Network, Inc.*, 57 F. Supp. 2d 973, 983 (C.D. Cal. 1999)).

16

**C. The bankruptcy court did not err by striking the cross-complaint under the anti-SLAPP statute.**

**1. Appellees satisfied their burden to show the claims were protected by the anti-SLAPP statute.**

Debtor argues that the anti-SLAPP motion was not timely because Mr. Remsen's complaint had similar causes of action and Appellees could have filed the anti-SLAPP motion in response to the initial complaint. Debtor suggests that pursuant to Civil Rule 12(f)(2), made applicable by Rule 7012, Appellees were required to file their special motion to strike within 21 days of Mr. Remsen's first amended complaint.

But the summons issued with Debtor's cross-complaint on August 23, 2022, was clear: the deadline to file and serve a written response was September 22, 2022. Appellees timely filed and served their special motion to strike on September 22, 2022.[12]

_____

[12] Pursuant to CCP § 425.16(f), defendants may file a special motion to strike within 60 days of the complaint or, at the court's discretion, at any later date. The Ninth Circuit has reasoned that § 452.16(g), which stays discovery after the filing of a special motion to strike, together with § 425.16(f), "create a default rule that allows the defendant served with a complaint to immediately put the plaintiff to his or her proof before the plaintiff can conduct discovery." *Metabolife Int'l, Inc.*, 264 F.3d at 846 (quoting *Rogers*, 57 F. Supp. 2d at 980). The Ninth Circuit held that "[b]ecause the discovery-limiting aspects of § 425.16(f) and (g) collide with the discovery-allowing aspects of [Civil] Rule 56, these aspects of subsections (f) and (g) cannot apply in federal court." *Id.* However, it is not apparent that allowing a defendant up to 60 days to file a special motion to strike based on the legal sufficiency of a complaint would impermissibly collide with federal procedure. The anti-SLAPP statute serves a different purpose than Civil Rule 12(b)(6), *see Makaeff v. Trump Univ., LLC*, 736 F.3d 1180, 1182 (9th Cir. 2013) (Wardlaw, J., concurring), and could reasonably apply even after a defendant has timely filed an answer. However, we need not decide this issue because Appellees filed

Debtor contends that Appellees failed to show that the claims in the cross-complaint were subject to CCP § 425.16. We disagree. Every claim in the cross-complaint is based on alleged statements and actions by Appellees in the dissolution proceeding, and therefore, each claim arises out of activity protected by CCP § 425.16.

The anti-SLAPP statute provides that an "act in furtherance of a person's right of petition or free speech" includes written or oral statements made before a judicial proceeding or in connection with an issue under consideration by a judicial body. CCP § 425.16(e); *see also Morgan v. Sacks, Ricketts & Case, LLP*, Case Nos. 22-15254, 22-15793, 2023 WL 2983577, at *2 (9th Cir. Apr. 18, 2023) ("The statute, in no uncertain terms, protects 'all communicative acts performed by attorneys as part of their representation of [a client] in a judicial proceeding or other petitioning context,' because such activity is 'per se protected as petitioning activity.'" (quoting *Contreras v. Dowling*, 5 Cal. App. 5th 394, 409 (2016))).

Debtor argues that her claims for declaratory relief are based on federal law, 28 U.S.C. § 2201, and thus not subject to the anti-SLAPP statute. We agree with the bankruptcy court that Debtor's claims for declaratory relief involve issues litigated in state court and "inextricably intertwined" with state court judgments. Moreover, Debtor's asserted bases for declaratory relief are premised on actions and statements made

---

their anti-SLAPP motion within the response deadline stated in the summons.

18

by Appellees in the dissolution proceeding. "The anti-SLAPP statute's definitional focus is not the form of the plaintiff's cause of action but, rather, the defendant's *activity* that gives rise to his or her asserted liability—and whether that activity constitutes protected speech or petitioning." *Navellier v. Sletten*, 29 Cal. 4th 82, 92 (2002).

Appellees adequately demonstrated that all of Debtor's claims involved protected conduct subject to the anti-SLAPP statute.

## 2. The cross-complaint did not state a plausible claim for relief under Civil Rule 12(b)(6).

The bankruptcy court determined that Debtor could not make a showing of probability that she would prevail on her claims for three reasons: (1) the cross-complaint appeared to be moot because it was based on the same nucleus of operative facts as Mr. Remsen's complaint which was dismissed with prejudice; (2) the cross-complaint appeared to be an impermissible collateral attack on the state court's orders, which is prohibited by the *Rooker-Feldman* doctrine; and (3) the court had previously remanded to the state court issues involving the dissolution judgment. Because Appellees' motion and the court's decision are premised on the legal insufficiency of Debtor's cross-complaint, we consider the order under the standards of Civil Rule 12(b)(6). *See Planned Parenthood Fed'n of Am., Inc.*, 890 F.3d at 834.

Civil Rule 12(b)(6) provides that dismissal is appropriate if the complaint fails to allege "enough facts to state a claim to relief that is

19

plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In assessing the adequacy of the complaint, the court must accept as true all allegations and construe them in the light most favorable to the plaintiff. *See Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Accordingly, "for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quotation marks omitted). Dismissal "may be based on either a 'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'" *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121 (9th Cir. 2008) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)).

Debtor did not state a plausible claim for relief. Each cause of action in the cross-complaint necessarily required the bankruptcy court to disregard state court orders and judgments. Such a determination is patently barred by the *Rooker-Feldman* doctrine. *See Carmona v. Carmona*, 603 F.3d 1041, 1050 (9th Cir. 2010) (explaining that the *Rooker-Feldman* doctrine "stands for the relatively straightforward principle that federal district courts do not have jurisdiction to hear de facto appeals from state court

20

judgments."); *see also Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005) (explaining that *Rooker-Feldman* bars suits "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments").

Because Debtor's cross-complaint does not state a plausible claim for relief, the bankruptcy court did not err by granting the special motion to strike.

### 3. The bankruptcy court did not err by refusing to grant leave to amend.

Debtor is correct that, when granting an anti-SLAPP motion under CCP § 425.16(b), bankruptcy courts must consider whether to grant leave to amend under Civil Rule 15(a). But here, the court's failure to consider Rule 15(a) is harmless error because Debtor does not demonstrate she could have successfully amended the cross-complaint, and amendment appears futile.

Pursuant to Civil Rule 15, leave to amend a complaint should be freely given when justice so requires. The court "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc). "This policy is 'to be applied with extreme liberality,'" *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (per curiam) (quoting

21

*Owens v. Kaiser Foundation Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001)), and the rule favoring liberal application "is particularly important for the pro se litigant," *Crowley v. Bannister*, 734 F.3d 967, 977-78 (9th Cir. 2013).

In determining whether to grant leave to amend, the bankruptcy court should consider several factors including: (1) undue delay; (2) bad faith or dilatory motive by the movant; (3) repeated failure to cure deficiencies by previous amendments; (4) undue prejudice to the opposing party; and (5) futility of amendment. *Brown v. Stored Value Cards, Inc.*, 953 F.3d 567, 574 (9th Cir. 2020) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). The consideration of prejudice to the opposing party carries the greatest weight. *Eminence Cap., LLC*, 316 F.3d at 1052. "Absent prejudice, or a strong showing of any of the remaining *Foman* factors, there exists a *presumption* under [Civil] Rule 15(a) in favor of granting leave to amend." *Id.* (citation omitted).

Debtor argues the court should have granted leave to amend so she could cure the defects and add a claim under 42 U.S.C. § 1983. But Debtor fails to explain how she could cure the defects in her claims given their legal infirmity, or how a further claim based on Appellees' conduct in the state court proceedings would not also be subject to the anti-SLAPP statute. Regardless of how Debtor may frame her causes of action, her purported injury flows directly from Appellees' alleged actions and statements made in the state court proceeding which culminated in the dissolution

22

judgment. The bankruptcy court has no power to reverse or vacate the dissolution judgment and state courts have repeatedly upheld its validity. And Debtor cannot amend the cross-complaint to allege a completely new injury without contradicting the allegations in her original complaint. *See Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296-97 (9th Cir. 1990) ("Although leave to amend should be liberally granted, the amended complaint may only allege other facts consistent with the challenged pleading." (cleaned up)).

Debtor does not demonstrate, nor do we discern, why amendment would not be futile. Thus, the court's failure to expressly consider Civil Rule 15(a) is harmless error. *See Van Zandt v. Mbunda (In re Mbunda)*, 484 B.R. 344, 355 (9th Cir. BAP 2012) ("Generally speaking, we ignore harmless error."), *aff'd*, 604 F. App'x 552 (9th Cir. 2015); Civil Rule 61 (made applicable by Rule 9005) ("At every stage of the proceeding, the court must disregard all errors and defects that do not affect a party's substantial rights.").

**D.      The court did not abuse its discretion by awarding attorney's fees and costs to Appellees.**

Finally, Debtor challenges the bankruptcy court's award of attorney's fees and costs. She argues that the requested fees were not supported by substantial evidence and Mr. Robinson should not be entitled to attorney's fees for representing himself in the special motion to strike.

23

California's anti-SLAPP statute provides that "a prevailing defendant on a special motion to strike shall be entitled to recover that defendant's attorney's fees and costs." CCP § 425.16(c)(1). The award is mandatory to a prevailing movant. *Phillips v. Gilman (In re Gilman)*, BAP No. CC-18-1101-STaL, 2019 WL 3074607, at *5 (9th Cir. BAP July 12, 2019), *aff'd*, 836 F. App'x 511 (2020). Because "the anti-SLAPP statute is 'intended to compensate a defendant for the expense of responding to a SLAPP suit,'" the "'provision is broadly construed so as to effectuate the legislative purpose of reimbursing the prevailing defendant for expenses incurred in extracting herself from a baseless lawsuit.'" *Graham-Sult*, 756 F.3d at 752 (quoting *Wanland v. Law Offices of Mastagni, Holstedt & Chiurazzi*, 141 Cal. App. 4th 15 (2006)).

State law governs awards of attorney's fees under CCP § 425.16(c). *Id.* at 751. Reversal of a fee award "is appropriate where there is no reasonable basis for the ruling or the trial court has applied the wrong test or standard in reaching its result." *Nichols v. City of Taft*, 155 Cal. App. 4th 1233 (2007) (cleaned up). Under California law, the determination of an appropriate fee award begins with the lodestar, which requires the court to multiply the reasonable hours spent on the case by the hourly prevailing rate for attorneys in the community. *See Ketchum v. Moses*, 24 Cal. 4th 1122, 1131-33 (2001). The court may then adjust the figure based on factors specific to the case. *Id.*

Here, the bankruptcy court considered Mr. Robinson's declaration and determined his hours and rate were reasonable. Mr. Robinson's declaration does not include any additional work performed solely on his own behalf, and the amount awarded would be the same regardless of whether Mr. Robinson was a named defendant. Debtor does not demonstrate an abuse of discretion in the court's fee award.

## CONCLUSION

Based on the foregoing, we AFFIRM the bankruptcy court's order granting with prejudice the special motion to strike and awarding attorney's fees and costs.